The next case called for oral argument is Milton v. Yoder. Counsel, whenever you're ready, you may proceed. Thank you, Your Honors. John Hurley for plaintiff's atonement. May it please the Court and the Counsel. We're here appealing the trial judge's grant of a 2619 motion to dismiss in favor of the defendant at the lead, Bill Yoder. We are asking the Court to reverse that decision to reinstate the claim so that it can proceed. Now, as the Court knows from the record, the basis for entry of the motion to dismiss was that the defendant was entitled to immunity. And I think in order to adequately address that immunity argument, we need to consider briefly the background of the case. Both of the parties to this case are elected public officials. My client and plaintiff, Ms. Milton, is the McLean County clerk, defendant Yoder, McLean County State's attorney. And what had happened in this case, Ms. Milton was charged with committing a crime, misuse of public funds. And the case ended up going to trial. Ms. Milton was acquitted of those charges. Did Yoder prosecute it or his office? Yoder's office did prosecute that, yes. He didn't ask for a special prosecutor. To my knowledge, no, he did not. In fact, apparently because of a conflict in providing a defense for Ms. Milton and in prosecuting the case, Ms. Milton had to go out and hire her own lawyer, and this was Mr. Smith of the Henshaw Culbertson firm out of Chicago. She hired him on her own just to defend those charges brought against her, defended it successfully for her, but in the process, she incurred roughly $43,000 in defense fees that normally she would not have had to spend because, as a general proposition, the State's attorney would have defended her in actions that arise out of her official duties. But since he was his office person. For criminal charges, he has a duty to defend? Well, I think what his duty would be under statute would have a couple of things. He would, yes, I think his office, I believe, would have defended her, although that's really, and I don't pretend to be an expert in criminal law, but what I do know is that he couldn't do it here. He said he couldn't do it because of a conflict. In fact, it's a conflict that he said existed that creates part of the problem here. You don't see that there's a conflict here with the State's attorney? Maybe. Absolutely. I think if I were the State's attorney in this case, I would have been nervous about this. Absolutely. And that's part of the problem here, as I'll get to. Two officeholders get into an argument as far as their budgets are concerned, let's just say. County board and county clerk. And both of them become the State's attorney and want some legal advice on what to do. Obviously, he can't represent both of them, correct? Isn't the rule that he picks which one he thinks has the legitimate position and that's who he represents? He has to make a decision which one's right and which one's wrong. I think he does. And then he represents whatever person or office that he thinks is legally right. Would not this be similar that if your circuit clerk was indicted criminally that he can't represent her? Absolutely. I think there's definitely a conflict of property here, no doubt about it. And we've never taken the position that there wasn't a conflict. What obligation does the county have to reimburse officeholders that unfortunately got indicted? I think if proper procedures followed, they get reimbursed. In this case, there's never been a dispute that she would get reimbursed for those legal fees. In fact, the defendant told her that she could and helped do it. So I don't think there's ever been a conflict. Who told her? The defendant, Yoder, actually sent an email to Milligan saying what you need to do is petition the court for these fees. In fact, I can read verbatim his instructions in an email to her. In order to seek reimbursement, it appears the only way to do so is by filing a petition in court for appointment of a special state's attorney based upon a conflict of interest. This petition would seek appointment non pro tongue, relating back to an earlier period in time or in the process. You or your attorney may file this petition. So he actually told her how to do it. The problem is he sent it back to her. He waited until it was too late for her to go and recover those fees. And therein lies the problem. But he didn't have an attorney-client relationship with her, correct? He couldn't have. The state's attorney is precluded from representing individuals. Not correct? I disagree. All right. So assuming that you're right and I'm wrong, you can't establish an attorney-client relationship just because if I say tell me how I can get out of my speeding ticket. We haven't developed an attorney-client relationship, have we? Well, you may have. In deciding whether or not an attorney-client relationship exists, we don't have to have a written fee agreement. I don't even have to pay for those services. The critical thing that the court looks at is was the individual approaching this lawyer, consulting this lawyer with an intent, with a belief that she was in an intent to seek legal advice. And his response was I have a conflict. Whether or not it was legitimate or not, his response was I have a conflict. Ultimately, it was a mixture of things. It was here's how you do it, but I have a conflict. I can't do it for you. And you're saying that came too late in any respect. It was just too late. By the time he said to her, here's how you do it. Telling a person you have a conflict is giving legal advice? And you've already established the attorney-client relationship? I think what he did here was the attorney-client relationship was established when she went to him and asked him, how do I do this? I understand that I might be entitled to get reimbursed for these legal fees. How do I do it? He does research. It takes him a month and a half to do research. He comes back and says, look, I'm sorry. I've got a conflict. I can't advise you on this. He probably should have said it right off the bat. I mean, it's pretty obvious, I would think, right off the bat. Talk to your attorney that represented you. But he says that I've got a conflict, and you think that there's an attorney-client relationship. Because he says I need some time to think about it? Until he said I can't do this for you, he's got an obligation. There's a relationship. If somebody comes into my office, state's attorney or not, somebody comes into my office and says to me, I was in a car wreck, and I need to know what the deadline is for me to file this lawsuit. What do they say? I want you to represent me. Here's a fact. He said, well, let me think about it. When does that relationship start then, which is what the state's attorney did? Are you representing that person when you're thinking about it? I could be. If I say to them, there's a distinction. I understand your question. In your scenario, I'm telling the person I'll think about it. I might represent you. I might not. I'll give it some thought. He didn't do that here. He said to her affirmatively, I'll check into it and let you know. It wasn't maybe I will do it, maybe I won't. It was I'm going to do this. I'm going to do this for you, Peggy. I'm going to get the answer for you. So when he affirmatively said to her, I'm going to do this for you, he's on the hook. He can't come back later on. Well, he can come back later on and say I'm not going to represent you and at that point terminate that relationship. But until something affirmative is done to terminate that relationship, he's got to come through on his promise. He can't sit back, not say anything to her, and then wait until after the deadline and then say, I think I have a conflict. I'm not going to do this. Again, you don't dispute that there was a conflict. Never been an issue. Frankly, the moment she came to me, if I would have been an issue, the moment she came to me and asked that question, I would have put my hand up and said stop right there. Can't touch this, no way, no how. I've got a conflict, don't even finish the question. Go talk to somebody else. That's what he should have done. He should have done it immediately. I would have personally concluded conflict, I'm running away. He didn't do that. Instead, he let the conflict fester for over a month, knowing full well she was expecting an answer from him. Knowing full well he said he would give her one, and lo and behold, she waits until it's too late, and then says, sorry, can't help you. Now, I think a duty was created in two ways here. I think there's simply the common law duty that lawyers have when a relationship is formed. Pardon me, I'm sorry. Was there any evidence in the record to indicate whether or not she made the same inquiry of her trial counsel? Nothing in the record other than the allegation I've made in the complaint when I specifically alleged that Attorney Smith in Chicago, she retained him just to defend the criminal charges. And I said that because that's all he was to do. They had specific discussions among them that he was not going to represent her on the fee issue. So that's why I specifically alleged she hired Smith just to defend the criminal charges. At the time that she approached Yoder about the fees, she had already been acquitted. Yes. He therefore had no conflict in representing her at that point, correct? Or advising her. Let me say advising her as a county office worker. If the state had no intention of an appeal, assuming there was no basis for an appeal, and I assume there wouldn't really be one here realistically, at that point I suppose one could argue the conflict is over. But I could also argue that the conflict still existed because the $43,000 is coming from the county. And when she filed a fee petition through a new lawyer. She was charged in the criminal case as an individual. She wasn't charged as an official circuit clerk, right? Oh, I think the county was the official, yes. So the basis of her getting reimbursed for her criminal charges would be the same as you or I if we got arrested, would it not? I'm not sure I follow the question. I apologize. Explain to me the basis that you claim the county would be on the hook for $43,000 to reimburse a defendant who was acquitted, albeit the circuit clerk or the President of the United States. Yeah, and I was just going to look here because if you see, and this is, I wouldn't say it's in the record, but you can see the fee petition itself filed in the criminal case. We haven't had a chance to look at the record. Okay, yeah. If you look, the attorney who filed the petition for her sets forth in there, here's the basis for reimbursement of the fees. And there's never really been an issue or an argument about the fact that she would be entitled to reimbursement for those fees, assuming a proper petition is filed in a timely manner. What happened was There's no question that she would, you're saying there's no question that she'd be entitled to reimbursement. I don't think there's any question of that. That's not an issue that has been raised by the defense as a defense to the case. That was an issue that was not before the trial court. We've alleged that she would certainly have been entitled to reimbursement had the petition been filed on time. Based upon what? Pardon? Again, based upon what? Well, it's, and I can't quote the specific sections, but it's based upon the duties set forth by the state's attorney. Is her status a certain clerk and a county officeholder? Yes, yes. She was indicted for theft and official misconduct, right? Yes. So it was all in the course of her duties. All in the course of her duties, yes. Are there any other cases that you've found that would allow an officeholder who has been criminally charged with whatever crime, as long as it's a criminal charge there, that's been acquitted that could get reimbursement from the county? I've never heard of that concept before. To be frank, we never researched that issue. It was just it was never brought up in the case. It hasn't been in question or an issue raised on any of the pleadings and motions. And I think what we did, of course, what you do on the 2619. Would it make any difference if she was convicted? Would you still prosecute this and get her attorney fees reimbursed if she was convicted? I do not know the answer to that. Why wouldn't you be able to, following the same line of thought? It's still an official. Would you make that same argument that if she was convicted, she ought to get reimbursed also? If. What about if the court imposed a fine on her? Would the county have to reimburse her for paying the fine? Not necessarily. Why not? But, again, we just never addressed that issue. It's never been an issue that's been raised by the court. And what we have to do is take a well-pledged fact that's true, and we've pledged that had she filed this petition on time, she would have been reimbursed for those fees. But going back to the question, would there still be a conflict in the state's attorney representing her in recovery of those fees? I suppose you could argue no, because the criminal case is essentially over. As state's attorney, he'd have an obligation to represent the county, wouldn't he? Exactly. That's where I was going to go with this. That's where the potential problem may come into play because, in fact, the state's attorney's office did object to the fee petition on behalf of the county or on behalf of the county. So, yes. And that's what makes this case so right for recovery of fees here and for a malpractice case. The problem is you go to the state's attorney. You can ask the state's attorney, and also as an individual licensed to practice law, as we've alleged, and you ask him a question, and what he can do is he can say, I'm going to give you the answer. I'll let you know, but then you wait until the deadline is coming up. If you don't give her the answer, you can sit back and say nothing. Let me ask you this. Is there anything in the record? We haven't had a chance to review the record yet. We don't have the record yet. Is there anything in the record that reflects that the state's attorney, at the time he was asked for this advice, knew that there was a 30-day deadline? No. Nothing in the record that would say he did or did not know. Okay. Does it have to be filed in the criminal case, or could she have an independent cause of action for reimbursement? Based on the advice of the state's attorney himself, it would have to be filed in the same case for the appointment of the special state's attorney, what he said. And I don't disagree with him on that. I think it did need to be filed in that criminal case to have him appointed as the special state's attorney. You're saying she does not, in your legal opinion, she does not have a separate cause of action against the county for reimbursement. It must be filed in the pending criminal case. That is our position, yes. That's our position, that it had to be filed in that case, and it was. I do not believe that she had a separate civil cause of action for recovery of those things. Of course, immunity has been raised, and we haven't really talked about that so much yet, but I do want to touch on that before my time is up. The argument here is that if there's duty, there's immunity. And if we look at it specifically, I think sovereign immunity is what – or public official immunity is what the defense is. And I think it's important when you see the record, and I don't get a chance to read the briefs, but because of the way this came to your court here, it's a little different and unusual. One of the things that we focus on here is whether or not the duties alleged to have been breached here were something that were unique to the state's attorney's office or unique to the public office held. And I guess the best way to make the analogy here is to convince you that it's not something unique to the state's attorney's office. As we look at the cases that have been cited in the brief, this type of argument has been tried and rejected in the past where a defendant, whether it be a medical doctor for a state hospital or whether it be a state trooper who's in an automobile accident in the line of duty, they've said, well, I'm immune from suit here because the things that happened happened while I was at work for the state. And that's really the essence of the argument that's being made here before I look down and kind of look through the weeds here. It says, look, you can't sue me because I'm a state's attorney, and since all this happened while I was a state's attorney, you can't sue me. What the courts have looked at is they've said, well, no, it's not that simple. You don't have immunity just because you're a state employee. What we have to look at is whether or not what you are doing is unique to your office. And I would submit to the court that this was not unique to the state's attorney's office. In fact, quite the contrary, any lawyer could have given her advice on this issue. But could any other public official other than the state's attorney in their capacity as that other public official in the county given her that advice? In other words, you could have a county board chairman who's a lawyer, you know, who presumably could have given her the same advice but could not have given her that advice as county board chairman. So why wouldn't the state's attorney be in a unique position as far as giving legal advice as a public official? I would say the facts of your question, I would suggest, prove the point. A county board member, if he's a lawyer, could give legal advice. Sure. No matter whether he's a county board member or not, he could give legal advice about how to get fees. That's no different than the state's attorney. He doesn't have to be state's attorney to give advice on how to recover those fees. But wasn't he asked as the state's attorney? And his answer was sort of a mixed answer. I can't represent you, but here's how you do it, because she was a county official and still a county official since she had been acquitted. So he's acting in his capacity as state's attorney. We've alleged that he was acting as state's attorney and simply as an individual licensed to practice law. We made the dual allegations there. In fact, the caption of the case is Bill Yoder individually and in his capacity. And so we've said, hey, we came to you both because you're a lawyer, number one, and we also came to you because you're state's attorney. It could be one or both. Thank you. Thank you, counsel. Counsel? Excuse me. May I please report, counsel? My name is Robert Murek. I'm a member of the law firm of Costigan & Woolworth in Bloomington, Illinois, and I represent the defendant, Apple Lee, William Yoder. It's always interesting when I come to oral arguments, I have to divorce myself from being in the trial court, because sometimes when I hear arguments and statements made, I want to stand up and say, I object, or do this, and I have to. We've actually had that happen. I restrain myself. I have to start off by telling you that several years ago I read once that Master Weaver's beautiful Persian rugs always leave a mistake in their work. Even though it's absolutely beautiful and you can't detect a mistake, they put the mistake in there because of their belief that only God is perfect. In reviewing my brief, in preparation to come down here, even though I read it three or four times before I filed it, I found a typographical error on page 15 of my brief. There is a block quotation, and on line three, the word express should be expressly, and the word on, O-N, should be upon, U-P-O-N. So the line three of the block quotation on page 15 should read, quote, expressly enjoined upon him by statute, which is a quote from the Supreme Court case dealing with public official immunity. There are three bases on which the dismissal of this lawsuit should be affirmed. First is the issue of duty, as we pointed out in our brief, and I want to address that in a moment and answer some questions and clear up some misconceptions that came in the early argument. The second is the doctrine of public official immunity, which is the basis on which the trial judge dismissed this complaint. And the third doctrine is sovereign immunity, which does not deal really with immunity. It deals with the issue of jurisdiction and whether the case should be filed in circuit court or exclusively in the court of claims. I look at this case in a section 2619 motion. I have to look at the well-planned allegations of the complaint, and when the court has a chance to look at the record and reflect on some of the statements that were made here in the oral argument, you will see that some of the statements made, and I'm assuring advertly, are statements of alleged fact which appear nowhere, nowhere in the two counts of the complaint that were filed in this case. One of the questions that the court posed to counsel was, did Mr. Yoder prosecute Peggy Milton? The answer to that, emphatically, is no, he did not prosecute Peggy Milton. He would have had a conflict in prosecuting Peggy Milton. He did not. Peggy Milton, in the criminal case, there was an attorney that came from the state's attorneys, statewide association, was assigned, and that attorney, I forget the man's name, I was not involved. So there was a special prosecutor appointed. Yes, there was a special prosecutor appointed, not William Yoder. The plaintiff acknowledges, and we know that she's the county clerk of McLean County, the plaintiff acknowledges Is his petition to the court for appointing a special prosecutor part of the record? Does it specify in there, I've got a conflict, please appoint somebody, or is it just a doc entry or what? No, it is not, to my knowledge, it is not part of the record in this case. I went back to try and look at the criminal file, and the criminal file, interestingly enough, when counsel said that Peggy Milton's private lawyer was hired only to defend her and not file a petition for fees, Peggy Milton's private counsel came in in January of 2008, months after this event took place, and filed a petition to expunge the record. That petition was granted, an order was entered expunging the record, and when I went up to the clerk's office to look at the file in the criminal case, the file was impounded, and the file was in, I was informed. Your suggestion, she already had counsels all during this time period. Well, we don't know. Well, I mean, if he filed a petition to expunge, presumably he's not doing it on his own. I raised that in my brief, that she had private counsel the entire time. She was represented by an attorney whose name is H, it's misspelled in the record in this case. His name is actually H. Lee, L-E-E Smith. He's a partner with the law firm of Hinshaw and Culberson. I think he was from Peoria. Well, but expungement's part of a criminal process, not a civil process. Yes. Right. So when I went to look at the record in the criminal case, I was informed, and I will tell you as an officer of the court by the circuit clerk in McLean County, you can't see it. It's locked away in a safe in my office, so I could not look at the criminal record in this case. But I can tell the court, as a matter of public record at the time, that the petition for expungement was filed by her private counsel, H. Lee Smith, in January of 2008. That was granted. Her record was expunged. The file that was filed against her and so forth. But more importantly, William Yoder did not prosecute her. She acknowledges in her complaint that she filed in this case, which you have not had a chance to read yet, she says on page 8-2 of the rest of paragraph 4 of her complaint, she says that she asked, I will read it because it's in counsel's brief, that at the outset of the aforementioned criminal case, the plaintiff requested, of the criminal case now, the plaintiff requested representation through the state's attorney's office and was advised that the McLean County state's attorney had a per se conflict of interest and could not represent her because he was also charged with prosecuting criminal cases in McLean County. Further, she was informed by the McLean County state's attorney to engage her own private legal counsel, et cetera, which she did. So she was, she acknowledges in the civil case that she filed here that she knew at the very outset of the criminal case that Mr. Yoder had a per se conflict of interest. In representing her in the criminal case, but not necessarily in representing her in the covering fees. She doesn't acknowledge that in her complaint, but in fact, he did. This is based on statute. The reason he had a conflict of interest is that under the county's code, which is 55 ILCS 5 backslash, I'll just give you the rest of the numbers, 3-9005A4, a state's attorney has a duty to defend all actions and proceedings brought against his county or any county or state officer in his official capacity with his county. The next subparagraph, subparagraph 7, the state's attorney has a duty to advise, to give his opinion without fear or reward, to any county officer in his county upon any question or law relating to any criminal or other matter in which the people or the county may be interested. So he has a statutorily enclosed duty. He is a constitutional state officer, as I indicated in the brief. But he has a statutory duty to advise and defend the county of McLean and any suits brought against it. He has a statutory duty to advise and defend county officials. He couldn't defend the county official in this case because she was charged criminally. And she was charged criminally in conduct that involved her office as county clerk of McLean County. It wasn't that she had shoplifted something from a retail store. It involved her official duties as county clerk of McLean County. Do you agree with the opposing counsel that assuming that there is the obligation on the county to reimburse in this type of situation that it must be filed in the criminal case? You know, I thought of it, and I don't think that that's the case. And the reason I don't think that's the case is because I wish I had an hour. The whole obligation, the whole framework in which a county official can then come in and petition for fees is Section 9-008 of the county's code. Section 9-008 of the county's code provides situations where a state's attorney is unable to perform his duties. Now, when you read that statute and read through it, first blush, you would say to yourself, well, this statute deals with situations that the state's attorney is sick, an extended illness, whatever. And there has to be, you know, the office has to carry on, so we're going to appoint someone to carry on and do the state's attorney's duties while he's incapacitated. There is nothing in that statute that deals with reimbursement of county officials under a situation like this. All of that is developed by case law. It's developed by case law. And what the case law has said is that in a situation where a state's attorney has statutorily a duty to defend a county official but can't because of a conflict of interest, or it could be a county treasurer, or a county treasurer in one case out of Cook County, or it could be some other county official, but where he's precluded from doing that and the county official or county officer goes out and hires a private counsel and is acquitted of the charges, not convicted, but is acquitted, once they're acquitted of the charges, then case law says, well, then you can come back in and you can file a petition. It doesn't say within that criminal case. Typically it's done that way. I don't mean to point my finger. Typically it's done that way, but there's case law which says that you can file a petition while the county person is even under investigation. There's a case out of the 3rd District Appellate Court. I didn't cite it in my brief because it wasn't an issue, but I have the citation here. A case out of the 3rd District Appellate Court called Baxter v. Peterman, P-E-T-E-R-L-I-N. Why don't you file a motion to supplement your brief with that, and counsel, we'll give you a chance to reply if you wish. Okay. Well, you can do it even before a case is filed. You can't have a hearing on the petition, and the petition's not going to be acted on unless the official is acquitted. And even if the official is acquitted, the county has the right to come in and contest it, and say, no, we don't think you're entitled to reimbursement, or we think the reimbursement of your fees is excessive. All of those are civil cases I present. They typically arise out of the criminal case, but I see nothing in the cases that I read, and there's not that many cases which would say that Peggy Milton couldn't have come in after this case and simply filed, like she did here, filed a complaint, a petition, and say, here, I want reimbursement of my attorney's fees, I want my private attorney appointed, Milton Proton, to go back as if he was the special assistant state's attorney to defend me in this action, and then the county, you have to reimburse me. And, of course, that's where the conflict arises. The conflict arises is because Peggy Milton asking Mr. Yoder, as state's attorney, what do I have to do to get reimbursed for my attorney's fees, that puts him in a position of conflict because then that brings into play his obligation as state's attorney to advise, by statute, and defend, by statute, the county of McLean in any petition that she would file. So there was a conflict, a conflict that prevented him from defending her and from giving her legal advice, and that's why we say in the first instance in this case, because you have to address the duty issue in the first instance. If you address the duty issue, as we suggest in our brief on appeal, you don't even get to the issue of public official's immunity because those are two completely separate issues. Public official's immunity has nothing to do with the issue of duty in the first instance. We come to the issue of public official's immunity. And I want to address one thing because the court raised it. The court said, well, what if I just ask you a question here? Is there an attorney-client relationship created? Counsel in his brief indicated, well, just by raising this question, you don't have to pay a fee and so forth, just by raising the question. The idea of an attorney-client relationship arises in the mind of the client. If the client believes there's an attorney-client relationship, well, then there's a relationship. And he cites a case, Westinghouse Electric, et cetera, which is a large antitrust case involving law firm of Brooklyn, Ellison, Chicago. When you look at that case and you look at the two cases that I've cited in my brief, dealing with the idea you don't have to pay a fee, you just have to talk to the lawyer, in all of those cases, one thing is present, and the thing that is present is that the proposed, quote, client, close quote, gave the lawyer confidential information about the client's case, cause of action, et cetera, none of which is pled here when you look at the allegations of this complaint. So there is no attorney-client relationship between Mr. Yoder and Ms. Milton in this case. There's a statutory duty, which he was conflicted out of. The trial judge ruled, and I believe correctly, that the suit was barred by the doctrine of public official immunity, which is different than local governmental court immunity, et cetera. The counsel for Ms. Milton argued at the court here this morning, sir, to talk about a case involving a doctor and a case involving a state trooper. Those are the cases of Jenkins v. Lee and Curry v. Leo, which do not deal with public official immunity. They deal with the doctrine of sovereign immunity or jurisdiction, which is completely separate. The doctrine of public official immunity was summarized by the Supreme Court back in 1942, in which the court stated the general rule of liability of binded judges applies alike to all officers exercising quasi-judicial powers, and they are exempt from liability for error or mistake of judgment in the exercise of their duty in the absence of corrupt or malicious motives. There is no allegation in either count one or count two of this complaint of any corrupt or malicious motives. That's not an issue. In her brief, Ms. Milton says, well, this really is not the law anymore. That's a really old Supreme Court case. I cited a case. Thankfully, I didn't know I would be down here in the Fifth District, but I cited a case from this district, decided in 1975, reaffirming that issue, upholding the dismissal of the complaint against the state's attorney, quoting that language from the Supreme Court. I also cited a case from the First District, decided in the 1990s, indicating the same law. The doctrine of public official immunity applies complete immunity for discretionary acts. And in her brief, Ms. Milton says, well, this really isn't discretionary. You know, 30 days, a statute of limitations type thing, it's not discretionary. This is just ministerial. I believe, and I've suggested in the brief, that the rendering of legal advice or the failure to timely render legal advice by the defendant in this case was a discretionary act. The interpretation of statutes and case law, the law interpreting those statutes, involves legal judgment, skill, and necessarily discretion. And that's particularly true in this case when you look and you understand the fact. And this goes back to a question asked by, I forget which of your honors asked it, well, could she come in if she was just a private citizen and get petitioned for her fees? Of course not. There's no basis on which a private citizen can come in if they're acquitted and say, here, I want the county to pay my private lawyer's fees. The only basis, the only basis on which she was entitled to ever file a petition was because of her official elected status as county clerk of McLean County. And in this instance, the county would have been obligated to defend her, but you have a problem. She's charged with a crime. It's only when she's acquitted. So, no, a private person would not be able to come in and do that. So, looking at this and considering when you look at the statute, 3-9008, this whole procedure is not in the statute. You have to read the cases that have decided that statute to come up with the procedure and the procedural process and so on. So, really, I think that it is a matter of discretion. It's a matter of judgment by the state's attorney. Finally, I raised in my brief, and I confess, I didn't raise it in the trial court, didn't think it was necessary at that point, but I raised it in my brief on appeal because I do not wish to waive it, that if this court would say there is a duty, if this court, and I don't believe that this court will, would say this complaint is not barred by the doctrine of public official immunity, if the court would get to those levels, then I would suggest to the court respectfully that my client is protected by the doctrine of sovereign immunity and jurisdiction of this case lies solely in the court of claims. Fortunately for me, I can't waive it. The issue of jurisdiction is never waived. The issue of jurisdiction can be raised any time I've cited a case in this brief that states that. The case law which I have cited in my brief indicates that a claim is against the state where there is no allegation the state employee exceeded the scope of his authority. No allegation here in this complaint that Mr. Yoder exceeded the scope of his authority. The claim is against the state where the duty on the defendant was not owed to the public generally, independent of his employment as a state employee. That's what the cases have referred to as the, quote, scope of the duty test. That's what Kotzel was talking about when he cited in his brief and here in this case of Jenkins v. Lee. I like the state trooper case, which is Curry v. White. The state trooper was involved in a motor vehicle accident, driving while he was on duty as a state trooper. I think he was on his way maybe to serve a summons or he wasn't on a high-speed chase or anything like that. He happened to be involved in a motor vehicle accident in the city of Joliet. He claimed that he was protected by sovereign immunity. It should only be in the court of claims. The Supreme Court said no. While you're doing this, this isn't part of your official duties as a state trooper. The duty that you have is the same duty that we all have as motorists, to drive with due care, caution, and so forth under the factual circumstances of this case. Here, the claim duty on the part of Mr. Yoder as state's attorney in McLean County is statutory. That duty is imposed on him because he's an elected state official and under the county's code, Section 3-9005, he has an obligation, he has a duty to render legal advice to the county and to county officials. So the duty in this case, unlike the duty in Jenkins v. Lee, which the court said was a duty in a medical malpractice case that arose independent of this doctor's employment as a psychiatrist at a state mental hospital. And in that Jenkins v. Lee case, interestingly enough, the defendant doctor and his co-defendant, a licensed clinical psychologist, admitted they had a duty. In this case, the only duty imposed on Mr. Yoder would arise out of his capacity as the elected state's attorney of McLean County. Finally, the last prong of the sovereign immunity issue deals with the idea that the alleged negligent conduct has to involve matters ordinarily with the employee's normal and official functions of the state. And obviously, as state's attorney, that prong of the test is satisfied here. So for the reasons that I've expressed in my brief, the reasons that I've indicated to the court here this morning, I would ask that the decision of the trial court dismissing this case with prejudice be approved. Thank you. Thank you, Counsel. Counsel? Thank you. Thank you, Counsel. In replying to some of the arguments made and questions asked, the issue came up as to, you know, does the state's attorney have a duty to defend a public official in the event of a criminal proceeding like this? And I pulled through my notes and did find 55 ILCS 5-3-9005,  and I quote, the duty of each state's attorney shall be to defend all actions and proceedings brought against his county or against any county or state officer in his official capacity within his county. I think that answers the question that came up earlier. Does the state's attorney's office have a duty to defend these county officials? Yes. Then we go to another question that was brought that is also answered in this statutory scheme, and that was, and I think Counsel referred to Section 3-9008, in the context of the question, do we have to seek recovery of the attorney fees and the appointment of a special state's attorney in the criminal case, or can we do it separately in a civil case? If we read the statute itself, 3-9008, it specifies that you would do it in the same case, in this case, the criminal case, because it says that an appointment of an attorney to perform those duties is being done, and I'll paraphrase part of this. The court in which said cause or proceeding is pending may appoint a competent attorney to perform the duties that would normally be performed by the state's attorney. So this statute specifically says that you seek the appointment in said cause. Okay, if the state's attorney had a conflict in that case because he, whatever he alleged, he had a special prosecutor appointed, when does that conflict expire? Why would he not have a conflict, and presumably your client knew that he had a conflict because he wasn't the one that was bringing the case to a trial, somebody else was. Right. And if she knew that, you know, why wouldn't she also be imputed with knowledge that his conflict remains on him throughout the course of the trial until it's over with? Well, she didn't seek his advice until after the trial was over with, and so I think from But the case is not over with because I think somebody mentioned that there was a petition for expungement also. That's still part of the case. Yes, and on that point, it I think But, I mean, why wouldn't the conflict still remain, I mean, normally a conflict remains throughout the entire pendency of the case. Would you not agree with that? Typically, yes. Why wouldn't it be typical in this case? It may well have been, as I mentioned earlier, it may well be that the conflict did continue on. The problem is he, the defendant here, as the lawyer who understands these issues, is the one who should have said to her She didn't know there was a conflict? Not necessarily on the fee issue. I think she did when it came to the prosecution, the trial of the criminal case. I think one could infer that she knew that. I haven't alleged necessarily that she knew there was conflict from all the way until the expungement. But, no, she wouldn't necessarily know that once she's acquitted, a conflict continues on. I think it was the defendant himself who said there's a conflict here. And he should have said that to her right away, not waiting 34 days or 30 some odd days to tell her that. You're saying that he didn't say it when he filed the petition for appointing a special prosecutor. I've got a conflict in this case. I've never seen that petition. I agree with the counsel. It's under seal. I wouldn't know what's in it. I can't get to it. But what we do know is that there was never anything filed by the state's attorney or his claim that he's filed anything saying that he had a conflict on the fee issue. She didn't know. If there was a conflict, he should have told her that. You believe, though, that there was a conflict. I want to make sure I'm clear on that. I'm not convinced there was or wasn't. That's a definite maybe, and I'm right to say that's a definite maybe. A definite possibility maybe. I'm not a state's attorney, and I'm not going to stand here before you and profess to be an expert on what a state's attorney should or shouldn't do, but I know what a lawyer should and shouldn't do. When you have a conflict in the case, is there any circumstances you can get back in that case and give legal advice to somebody? Well, I personally wouldn't want to, and I can't imagine that Mr. Yoder would have wanted to, and that's why I don't understand why he didn't say to her right off the bat, I can't do this, you've got to go get somebody else. I can't do this. And that's the problem. Thank you, counsel. We appreciate the briefs and arguments of counsel, and we appreciate your coming down here to argue, and we'll take the case on.